UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00278-MOC

| | |
|---|---|
| **MATTHEW G. FREEMAN** ) | |
| ) | |
| ) | ORDER |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| **NANCY BERRYHILL,** ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on the parties' opposing Motions for Summary Judgment (#11 and #13). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.     Administrative History**

Plaintiff applied for Title XVI Supplemental Security Income (SSI) benefits in in May 2013, alleging that he became disabled on August 1, 2011. (Tr. 18). His claim was denied at the initial and reconsideration levels of review. (Tr. 18, 90).  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 95). A hearing was held before Sherman Schwarzberg, an ALJ, on December 3, 2014, at which plaintiff had an attorney representative present. (Tr. 18). In a February 5, 2015 written

decision, the ALJ denied the plaintiff's claim. (Tr. 18-29). Plaintiff requested review of the ALJ's decision. (Tr. 14). The request for review was denied by the Appeals Council on June 22, 2016 (Tr. 1-6), rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted his available administrative remedies and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### C. The Administrative Decision

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since May 13, 2013, which was the claimant's application date. (Tr. 20). At step two, the ALJ found that the plaintiff had the following severe impairments: Asperger

disorder, anxiety disorder, attention deficit, hyperactivity disorder (ADHD), borderline intellectual functioning, and a learning disorder in mathematics. (Tr. 20). At step three, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-22).

The ALJ concluded that the plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with certain non-exertional limitations. (Tr. 22). These non-exertional limitations included the ability to perform simple, routine and repetitive tasks with occasional contact with co-workers, supervisors, and the public. (Tr. 22).

At step four, the ALJ found that plaintiff Freeman could not perform his past relevant work. (Tr. 27). At step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that the plaintiff could perform, given his age, education, work experience, and RFC. (Tr. 28-29). Accordingly, the ALJ determined that the plaintiff had not been under a disability within the meaning of the Social Security Act, 20 C.F.R. 404.1520(g), from July 27, 2012. (Tr. 29).

**D.      Discussion**

The court has closely read plaintiff's Memorandum of Law (#12) supporting his Motion for Summary Judgment.  Plaintiff has made the following assignment of error:

   I.   The ALJ erred in failing to explain why limitations placed on the claimant by medical sources were not reflected in the RFC.

(#12) at 4. Plaintiff's assignment of error will be discussed below.

Plaintiff argues that the ALJ erred in failing to incorporate findings from a psychological evaluation performed by Dr. Fiore and failing to note the need for a "calm, supported work environment." (#12) at 4. The plaintiff argues that the ALJ did not draw the appropriate logical bridge between Dr. Fiore's opinions and the resulting RFC. (#12) at 5. Specifically, the plaintiff argues that the ALJ erred in not limiting the claimant to a low stress, supportive, and consistent work environment. (#12) at 6.

The ALJ did, however, discuss the opinion of Dr. Fiore at length, (Tr. 24-25), and specifically noted his conclusion that "the claimant should be capable of functioning adequately in a supportive low-stress and consistent work environment." (Tr. 26). The ALJ further discussed Dr. Fiore's finding that "[t]he claimant would probably experience moderate, and possibly severe, problems relating to fellow workers, supervisors, and the public and would quickly become overwhelmed to the level of a severe impairment in a high-stress environment." *Id.* The ALJ assigned some weight to this medical opinion, noting that the evidence from Dr. Fiore supported the ability to perform simple, routine and repetitive tasks with no more than the occasional interaction with co-workers, supervisors, and the public (better with things than with people). *Id.* In a passage quoted by the plaintiff, Dr. Fiore noted that the plaintiff "appears to cope poorly with interpersonal stress." (#12) at 4, *quoting* (Tr. 587).

As discussed by the ALJ, Dr. Fiore found that the claimant became quite anxious in large groups or in social settings, but was "okay in one-on-one situations." (Tr 24). Further, Dr. Fiore noted—and the ALJ discussed—that Mr. Freeman would have difficulty relating

to fellow workers, supervisors, and the public. (Tr. 25). Such a finding was also articulated by the ALJ when reviewing the opinions of the state agency examiners, who noted that Mr. Freeman would need a "low stress, predictable work routine with clearly defined work responsibilities." (p. 27).

The court notes that SSR 85-15 mandates that since the "reaction to the demands of work (stress) is highly individualized," any impairment-related limitations caused by this stress must be reflected in the RFC. 1985 WL 56857, at *6. Here, the impairment-related limitation *was* incorporated into the RFC. As the claimant was "okay" in one-on-one settings, the ALJ limited him to limited interactions with others. As Dr. Fiore and others opined about the need for a predictable, clearly defined work environment, the plaintiff's RFC was limited to simple, routine tasks.[1] The court is not "left to guess." The ALJ was clear about the source of the claimant's anxiety, writing:

> As noted by the examiner, the claimant submitted that he was okay in on-on-one situations, but would become very anxious in larger groups or in social settings. As such, a provision has been incorporated within the [RFC] wherein the claimant is limited to no more than occasional interaction with co-workers, supervisors, and the public.

(Tr. 21).

The plaintiff also claims that the ALJ did not adequately take into account Dr. Fiore's opinion that he required a "supportive work environment." A supportive work environment was then taken to mean a "sheltered work shop environment." (#12) at 7.

---

[1] The ALJ also noted that the plaintiff would play online games into the night as to affect his sleep and make him tired throughout the day. (Tr. 26). The court makes no judgment about the complexity of tasks involved in online gaming over several hours; whether these games, at times, may involve stressful situations; or whether the plaintiff was able to perform more than simple, routine actions when playing such games.

"Sheltered employment is employment provided for handicapped individuals in a protected environment under an institutional program." *Titles II & XVI: Determining Whether Work Is Substantial Gainful Activity-Employees*, Soc. Sec. R. 83-33 (S.S.A. 1983). Nothing in Dr. Fiore's opinion suggests that he intended this specific program when he discussed a "supportive work environment." *See* Siedlik v. Berryhill, No. CIV-15-412-JHP-KEW, 2017 WL 1208749, at *3 (Mar. 15, 2017), report and recommendation adopted sub nom. Siedlik v. Berryhill, 2017 WL 1207561 (Mar. 31, 2017). Further, the ALJ's questioning of the vocational expert mirrored claimant's impairments and the ALJ's RFC findings. *See id.*

The court is asked whether the ALJ had substantial evidence upon which to base his determination. Put another way, a court must ask whether the ALJ has sufficiently explained his decision making process in formulating the plaintiff's RFC. Here, the court is not "left to guess" at how the ALJ arrived at his determinations of the plaintiff's RFC. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

The ALJ in this case made a determination based on substantial evidence and provided a sufficient explanation of how and why he determined plaintiff's RFC. He was under no obligation to adopt Dr. Fiore's occupational conclusions as Dr. Fiore was not a treating source. Instead, the ALJ specifically addressed the severity of the mental health issues which plaintiff contends would have supported a limitation on his ability to work. The extensive discussion of the ALJ in this case informed this court of the ALJ's reasoning and was substantively more valuable than the comparable boilerplate assessment in Mascio

and, thus, was more than sufficient for this reviewing court to assess from the decision being reviewed whether substantial evidence supported the ALJ's decision.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignment of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED;**

(2) plaintiff's Motion for Summary Judgment (#11) is **DENIED;**

(3) the Commissioner's Motion for Summary Judgment (#13) is **GRANTED;** and

(4) this action is **DISMISSED.**



Signed: May 10, 2017

Max O. Cogburn Jr.
United States District Judge